## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MICHIGAN

JAY PEMBERTON,            )

                                )

       PLAINTIFF,         )       CASE NO.

                                )

       VS.               )       HON.

                                )

BELL'S COMSTOCK BREWERY,    )

                                )

       DEFENDANT.      )

_____)

## COMPLAINT

PLAINTFF, JAY PEMBERTON, by and through his attorneys, CARLA D. AIKENS, P.L.C., submits the following Complaint against DEFENDANT BELL'S COMSTOCK BREWERY ("Defendant").

## JURY DEMAND

COMES NOW PLAINTIFF, JAY PEMBERTON, and hereby makes his demand for trial by jury.

## JURISDICTION

1. At all times relevant to this action Plaintiff was a resident of Kalamazoo County in the State of Michigan.

2. Defendant is a domestic limited liability company, with a continuous and systematic place of business located at 8938 Krum Ave., Kalamazoo, Michigan 49053.

3. All relevant actions giving rise to this complaint took place in Kalamazoo County in the State of Michigan.

4. This Court has jurisdiction over this action pursuant to M.C.L. 15.363.

## VENUE

1

5.     Venue is proper because the unlawful employment actions giving rise to Plaintiff's claims occurred in this district.

## STATEMENT OF FACTS

6.     On March 14, 2002, Defendant hired Plaintiff to work for them in the capacity of a Packager.

7.     Plaintiff's starting rate as a Packager was $7.25.

8.     For approximately 8 years Plaintiff was receiving regular raises and promotions.

9.     Sometime in 2010 Plaintiff took a pay cut and was told that Defendant feared that he would be overpaid compared to other brewers that had been in that position longer if he continued to receive pay increases at the regular schedule.

10.     Sometime in 2012, Plaintiff was told by Carrie Yunker, HR Manager, that he would never be promoted within the brewing department. Plaintiff was not given a reason upon asking why.

11.     Andy Farrell, Plaintiff's former supervisor, blamed Plaintiff for a procedural failure even though the brewer who made the mistake admitted it.

12.     Sometime in 2013 or 2014 Plaintiff witnessed an unqualified Cellarman, Jake Steele, receive a promotion to 3rd Shift Lead.

13.     Not only was Steele unqualified for the position, Plaintiff was informed that Steele had a sexual encounter with a coworker and HR was aware of it.

14.     Upon Steele's promotion, Plaintiff became frustrated and pushed a chair across the floor to clear it out of a working space.

15.     During Plaintiff's next review, the incident was framed as "Plaintiff kicked a chair across the room and it smashed into a wall."

2

16.     Sometime in 2014, one year after Steele's promotion, Plaintiff was asked to give his opinion on Steele's progress.

17.     Because Plaintiff previously trained Steele, he was able to opine and provide examples of how Steele was unqualified for the job.

18.     Sometime in 2016, due to the constant physical nature of the job, Plaintiff suffered a lower back injury resulting in him needing to take time off from work.

19.     After his injury, Plaintiff felt uncomfortable when interacting with others. Plaintiff was told that some of his coworkers felt he was "milking" his injury.

20.     David Sawyer told Plaintiff "Everyone has back problems," and told Plaintiff to "get over it" while on a trip to a conference.

21.     David Sawyer left his employment with Defendant and upon his departure he gave gifts to everyone except Plaintiff. When Plaintiff asked for the reason Sawyer told him he had been "bad."

22.     Sometime in 2017, $230 was stolen out of Plaintiff's wallet that was stored in his personal locker.

23.     Plaintiff reached out to HR to let them know of the theft but HR did not address his situation specifically; instead, about 2 weeks later, HR sent out a mass general email stating that they were intolerant of theft.

24.     Plaintiff became very upset that nothing was done about his money being stolen. As a result, Defendant characterized Plaintiff as having developed a "negative attitude," as recorded by his supervisor and used against him in a performance review.

25.     Sometime in 2018, "Pullman" asked Plaintiff how he wanted his review to be "done." Plaintiff responded that he did not want to dictate the review process. In return, Pullman suggested that the review be completed by using shift notes.

26.     Plaintiff objected to the use of shift notes for his review, stating that shift notes were a poor reflection of his work ethic and most importantly, shift notes were not a requirement of his position.

27.     In November 2018, Defendant implemented a new procedure that made Plaintiff feel unsafe. Plaintiff protested the new procedure in a meeting, stating that he feared someone would be injured but Defendant dismissed his concerns.

28.     In December 2018, Plaintiff suffered a back injury due to the ergonomic procedural failure stemming from the new product procedural protocol he previously protested.

29.     Carrie Yunker offered Plaintiff ADA paperwork, but Plaintiff did not know what it was at the time.

30.     Plaintiff informed Carrie Yunker that he was seeking counsel for information regarding the ADA paperwork.

31.     When Plaintiff returned to work, he was on "light duty" and was told there was plenty for him to do.

32.     After about 3-4 weeks of light work duty, Plaintiff was told he could not return to his light duty position and was subsequently sent home.

33.     In January 2019, a video of Plaintiff doing a flip while in the water was circulated amongst his coworkers. Defendant attempted to use the video to disprove Plaintiff's injury, but Plaintiff was instructed by his doctor that water/swimming could provide relief for his back injury.

4

34.     February 2019, Pullman was suspended pending further investigation for his failure to conduct Plaintiff's reviews according to protocol.

35.     A few days into suspension, Pullman was terminated.

36.     Before being terminated Pullman admitted that Sawyer "warned him about Plaintiff" and he and others received a "Jay File."

37.     Sometime in 2020, Plaintiff was told that Pullman was suing Defendant for wrongful termination and Plaintiff was named as a key witness.

38.     During a deposition, Mark Wilkenson accused Plaintiff of being in "cahoots" with HR in a scheme to terminate Pullman.

39.     Paul Dragicewich joined the team sometime in 2020.

40.     Shortly after his arrival, Plaintiff noticed his negative behavior and reported it to "Dana" who claimed he was already aware and was "working on it."

41.     Plaintiff observed Paul yell, swear, and throw things on the job.

42.     Sometime in 2021, Paul made comments about "Akiba's" Instagram account stating that her images were "racy."

43.     Plaintiff was told that his department viewed him as a "cancer" and as someone who was "milking" his injury.

44.     Sometime around mid-June 2021, Plaintiff attended a meeting with HR where he was presented paperwork to sign. The paperwork included an separation and release agreement to where Defendant proposed to pay Plaintiff in exchange for his compliance in the investigation of a matter involving a sexual assault that did not pertain to him.

45.     Plaintiff refused to sign paperwork and informed Defendant that he was going to seek counsel for advice.

46.    Plaintiff was terminated along with receipt of the separation agreement.

47.    As a result of Defendant's discriminatory, adverse actions, Plaintiff suffered actual damages, compensatory damages, emotional damages, and damages to his reputation in his community and in his profession.

48.    Plaintiff has been damaged by Defendant in an amount to be proven at trial.

49.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT – FAILURE TO ACCOMMODATE

1.    Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

2.    Plaintiff brings this suit under a federal law called the Americans with Disabilities Act ("ADA").

3.    Plaintiff claims Defendant discriminated against him by not accommodating his disability.

4.    Under the ADA, to "accommodate" a disability is to make some change that will let a person with a disability perform the job. An accommodation is "reasonable" if it is effective and its costs are not clearly disproportionate to the benefits it will produce.

5.    A reasonable accommodation may include a change in such things as ordinary work rules, facilities, conditions, or schedules.

6.    Once an employer is aware of an employee's disability and an accommodation has been requested, the employer must discuss with the employee whether there is a reasonable accommodation that would permit him to perform the job. Both the employer and the employee must cooperate in this interactive process in good faith.

7.      At all relevant times, Plaintiff was an employee of Defendant within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

8.      At all relevant times, Defendant was an employer within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

9.      At all relevant times to this action, Plaintiff was a qualified individual with a disability pursuant to 42 U.S.C. § 12111(8) who, with or without accommodation, could perform the essential functions of his job.

10.     Plaintiff was an individual with a disability within the meaning of 42 U.S.C § 12102, in that he had a physical impairment that substantially limited one or more of his major life activities, who with or without accommodation could perform the essential functions of his job with Defendant.

11.     Plaintiff's disability is a lower back injury.

12.     Plaintiff requested time off to undergo treatment and requested a light workload.

13.     At all times relevant hereto, Defendant had a duty under the ADA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Plaintiff includes, but is not limited to, allowing Plaintiff to work the light load.

14.     At all times relevant hereto, Defendant could have accommodated Plaintiff's disability without suffering an undue hardship.

15.     Defendant was aware of Plaintiff's disability at the time of his request.

16.     At all relevant times hereto, Defendant had a duty under the ADA not to discriminate against Plaintiff with respect to compensation or terms, conditions, or privileges of employment because of a disability.

17.     At all relevant times hereto, Defendant had a duty not to retaliate against Plaintiff with respect to his employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive him of employment opportunities or otherwise adversely affect the employment status of Plaintiff, in retaliation for his requesting an accommodation.

18.     Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of his disability.

19.     Defendant failed to provide Plaintiff with a reasonable accommodation.

20.     Defendant refused to allow Plaintiff to work the light load due to his disability.

21.     Defendant sent Plaintiff home instead of accommodating him.

22.     As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment.

23.     As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer physical pain and suffering.

24.     As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer mental/emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to irritability, depression, anxiety, worry, humiliation, grief, sadness, and anger.

**COUNT II**
**VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES ACT – FAILURE TO ACCOMMODATE**

25.     Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

8

26.     Plaintiff brings this suit under the Michigan Persons with Disabilities Act ("PWDCRA "),
        MCL § 37.1201, et seq.

27.     Plaintiff claims Defendant discriminated against him by not accommodating his disability.

28.     At all relevant times, Plaintiff was an employee of Defendant within the meaning of the
        PWDCRA.

29.     At all relevant times, Defendant was an employer within the meaning of the PWDCRA.

30.     At all relevant times to this action, Plaintiff was a qualified individual with a disability
        pursuant to the PWDCRA who, with or without accommodation, could perform the
        essential functions of his job.

31.     Plaintiff was an individual with a disability within the meaning of the PWDCRA, in that
        he had a physical impairment that substantially limited one or more of his major life
        activities, who with or without accommodation could perform the essential functions of his
        job with Defendant.

32.     Plaintiff 's disability is a lower back injury sustained due to his work over many years for
        Defendant.

33.     Plaintiff requested time off to receive necessary treatment and requested a light workload
        upon his return to work.

34.     At all times relevant hereto, Defendant had a duty under the PWDCRA to accommodate
        Plaintiff for purposes of employment unless the accommodation would impose an undue
        hardship. Defendant's duty to accommodate Plaintiff includes, but is not limited to,
        allowing Plaintiff to work the light load.

35.     At all times relevant hereto, Defendant could have accommodated Plaintiff's disability
        without suffering an undue hardship.

36.    Defendant was aware of Plaintiff's disability at the time of Plaintiff's request.

37.    At all relevant times hereto, Defendant had a duty under the PWDCRA not to discriminate against Plaintiff with respect to compensation or terms, conditions, or privileges of employment because of a disability.

38.    At all relevant times hereto, Defendant had a duty not to retaliate against Plaintiff with respect to his employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive him of employment opportunities or otherwise adversely affect the employment status of Plaintiff, in retaliation for his requesting an accommodation.

39.    Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of his disability.

40.    Defendant failed to provide Plaintiff with a reasonable accommodation.

41.    Defendant refused to allow Plaintiff to work the lighter work load.

42.    Defendant sent Plaintiff home instead of accommodating him.

43.    As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment.

44.    As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer physical pain and suffering.

45.    As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer mental/emotional pain and suffering, including but not

10

limited to loss of enjoyment of a normal life due to irritability, depression, anxiety, worry, humiliation, grief, sadness, and anger.

### COUNT III
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT – RETALIATION

46.     Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

47.     Plaintiff brings this suit under a federal law called the Americans with Disabilities Act ("ADA").

48.     Plaintiff claims Defendant discriminated against him by not accommodating his disability.

49.     Under the ADA, to "accommodate" a disability is to make some change that will let a person with a disability perform the job. An accommodation is "reasonable" if it is effective and its costs are not clearly disproportionate to the benefits it will produce.

50.     A reasonable accommodation may include a change in such things as ordinary work rules, facilities, conditions, or schedules.

51.     Once an employer is aware of an employee's disability and an accommodation has been requested, the employer must discuss with the employee whether there is a reasonable accommodation that would permit him to perform the job. Both the employer and the employee must cooperate in this interactive process in good faith.

52.     At all relevant times, Plaintiff was an employee of Defendant within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

53.     At all relevant times, Defendant was an employer within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

54.   At all relevant times to this action, Plaintiff was a qualified individual with a disability pursuant to 42 U.S.C. § 12111(8) who, with or without accommodation, could perform the essential functions of his job.

55.   Plaintiff was an individual with a disability within the meaning of 42 U.S.C § 12102, in that he had a physical impairment that substantially limited one or more of his major life activities, who with or without accommodation could perform the essential functions of his job with Defendant.

56.   Plaintiff 's disability is a lower back injury.

57.   Plaintiff requested to time off to receive necessary treatment and to work a lighter load upon returning to work.

58.   At all times relevant hereto, Defendant had a duty under the ADA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Plaintiff includes, but is not limited to, allowing Plaintiff to work the lighter work load.

59.   At all times relevant hereto, Defendant could have accommodated Plaintiff's disability without suffering an undue hardship.

60.   Defendant was aware of Plaintiff's disability at the time of Plaintiff's request.

61.   At all relevant times hereto, Defendant had a duty under the ADA not to discriminate against Plaintiff with respect to compensation or terms, conditions, or privileges of employment because of a disability.

62.   At all relevant times hereto, Defendant had a duty not to retaliate against Plaintiff with respect to his employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Plaintiff for employment in any way which

12

deprived or tended to deprive him of employment opportunities or otherwise adversely affect the employment status of Plaintiff, in retaliation for him requesting an accommodation.

63.  Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of his disability.

64.  Defendant failed to provide Plaintiff with a reasonable accommodation.

65.  Defendant refused to allow Plaintiff work the light work load.

66.  Defendant sent Plaintiff home  instead of accommodating him.

67.  As a direct and proximate result of Defendant's discrimination and retaliation, up through and including termination, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment.

**COUNT IV**
**VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES ACT –**
**RETALIATION**

68.  Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

69.  Plaintiff brings this suit under the Michigan Persons with Disabilities Act ("PWDCRA"), MCL § 37.1201, et seq.

70.  Plaintiff claims Defendant discriminated against him by not accommodating his disability.

71.  At all relevant times, Plaintiff was an employee of Defendant within the meaning of the PWDCRA.

72.  At all relevant times, Defendant was an employer within the meaning of the PWDCRA.

73.  At all relevant times to this action, Plaintiff was a qualified individual with a disability pursuant to the PWDCRA who, with or without accommodation, could perform the essential functions of his job.

13

74.    Plaintiff was an individual with a disability within the meaning of the PWDCRA, in that he had a physical impairment that substantially limited one or more of his major life activities, who with or without accommodation could perform the essential functions of his job with Defendant.

75.    Plaintiff 's disability is a lower back injury.

76.    Plaintiff requested to time off to receive necessary treatment and to work a light work load upon returning to work.

77.    At all times relevant hereto, Defendant had a duty under the PWDCRA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Plaintiff includes, but is not limited to, allowing Plaintiff to work the light work load.

78.    At all times relevant hereto, Defendant could have accommodated Plaintiff's disability without suffering an undue hardship.

79.    Defendant was aware of Plaintiff's disability at the time of Plaintiff's request.

80.    At all relevant times hereto, Defendant had a duty under the PWDCRA not to discriminate against Plaintiff with respect to compensation or terms, conditions, or privileges of employment because of a disability.

81.    At all relevant times hereto, Defendant had a duty not to retaliate against Plaintiff with respect to his employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive him of employment opportunities or otherwise adversely affect the employment status of Plaintiff, in retaliation for him requesting an accommodation.

14

82.     Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of his disability.

83.     Defendant failed to provide Plaintiff with a reasonable accommodation.

84.     Defendant refused to allow Plaintiff to work the light load.

85.     Defendant sent Plaintiff home instead of accommodating him.

86.     As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment.

**COUNT V**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT – DISABILITY DISCRIMINATION**

87.     Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

88.     Plaintiff brings this suit under a federal law called the Americans with Disabilities Act ("ADA").

89.     Plaintiff claims Defendant discriminated against him by not accommodating his disability.

90.     Under the ADA, to "accommodate" a disability is to make some change that will let a person with a disability perform the job. An accommodation is "reasonable" if it is effective and its costs are not clearly disproportionate to the benefits it will produce.

91.     A reasonable accommodation may include a change in such things as ordinary work rules, facilities, conditions, or schedules.

92.     Once an employer is aware of an employee's disability and an accommodation has been requested, the employer must discuss with the employee whether there is a reasonable accommodation that would permit him to perform the job. Both the employer and the employee must cooperate in this interactive process in good faith.

15

93.     At all relevant times, Plaintiff was an employee of Defendant within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

94.     At all relevant times, Defendant was an employer within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

95.     At all relevant times to this action, Plaintiff was a qualified individual with a disability pursuant to 42 U.S.C. § 12111(8) who, with or without accommodation, could perform the essential functions his job.

96.     Plaintiff was an individual with a disability within the meaning of 42 U.S.C § 12102, in that he had a physical impairment that substantially limited one or more of his major life activities, who with or without accommodation could perform the essential functions of his job with Defendant.

97.     Plaintiff 's disability is a lower back injury.

98.     Plaintiff requested to time off to receive necessary treatment and to work a light load upon his return to work.

99.     At all times relevant hereto, Defendant had a duty under the ADA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Plaintiff includes, but is not limited to, allowing Plaintiff to work the light load.

100.    At all times relevant hereto, Defendant could have accommodated Plaintiff's disability without suffering an undue hardship.

101.    Defendant was aware of Plaintiff's disability at the time of Plaintiff's request.

102.    At all relevant times hereto, Defendant had a duty under the ADA not to discriminate against Plaintiff with respect to compensation or terms, conditions, or privileges of employment because of a disability.

103.    At all relevant times hereto, Defendant had a duty not to retaliate against Plaintiff with respect to his employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive him of employment opportunities or otherwise adversely affect the employment status of Plaintiff, in retaliation for his requesting an accommodation.

104.    Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of his disability.

105.    Defendant failed to provide Plaintiff with a reasonable accommodation.

106.    Defendant refused to allow Plaintiff to work the light load.

107.    Defendant sent Plaintiff home instead of accommodating him.

108.    As a direct and proximate result of Defendant's discrimination and retaliation, up to and through his termination, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment.

109.    As a direct and proximate result of Defendant's discrimination and retaliation, up to and through termination, Plaintiff has suffered and will continue to suffer physical pain and suffering.

110.    As a direct and proximate result of Defendant's discrimination and retaliation, up to and through termination, Plaintiff has suffered and will continue to suffer mental/emotional

pain and suffering, including but not limited to loss of enjoyment of a normal life due to irritability, depression, anxiety, worry, humiliation, grief, sadness, and anger.

## COUNT VI
## VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES ACT – DISABILITY DISCRIMINATION

111.  Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

112.  Plaintiff brings this suit under the Michigan Persons with Disabilities Act ("PWDCRA"), MCL § 37.1201, et seq.

113.  Plaintiff claims Defendant discriminated against him by not accommodating his disability.

114.  At all relevant times, Plaintiff was an employee of Defendant within the meaning of the PWDCRA.

115.  At all relevant times, Defendant was an employer within the meaning of the PWDCRA.

116.  At all relevant times to this action, Plaintiff was a qualified individual with a disability pursuant to the PWDCRA who, with or without accommodation, could perform the essential functions of his job.

117.  Plaintiff was an individual with a disability within the meaning of the PWDCRA, in that he had a physical impairment that substantially limited one or more of his major life activities, who with or without accommodation could perform the essential functions of his job with Defendant.

118.  Plaintiff 's disability is a lower back injury.

119.  Plaintiff requested to time off to receive necessary treatment and to work the light load upon his return to work.

120.  At all times relevant hereto, Defendant had a duty under the PWDCRA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue

hardship. Defendant's duty to accommodate Plaintiff includes, but is not limited to, allowing Plaintiff to work the light load.

121. At all times relevant hereto, Defendant could have accommodated Plaintiff's disability without suffering an undue hardship.

122. Defendant was aware of Plaintiff's disability at the time of Plaintiff's request.

123. At all relevant times hereto, Defendant had a duty under the PWDCRA not to discriminate against Plaintiff with respect to compensation or terms, conditions, or privileges of employment because of a disability.

124. At all relevant times hereto, Defendant had a duty not to retaliate against Plaintiff with respect to his employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive him of employment opportunities or otherwise adversely affect the employment status of Plaintiff, in retaliation for him requesting an accommodation.

125. Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of his disability.

126. Defendant failed to provide Plaintiff with a reasonable accommodation.

127. Defendant refused to allow Plaintiff to work the light load.

128. Defendant sent Plaintiff home instead of accommodating him.

129. As a direct and proximate result of Defendant's discrimination and retaliation, up to and including termination, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment.

130.    As a direct and proximate result of Defendant's discrimination and retaliation, up to and including termination, Plaintiff has suffered and will continue to suffer physical pain and suffering.

131.    As a direct and proximate result of Defendant's discrimination and retaliation, up to and including termination, Plaintiff has suffered and will continue to suffer mental/emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to irritability, depression, anxiety, worry, humiliation, grief, sadness, and anger.

## COUNT VII
## DISCRIMINATION ON THE BASIS OF AGE IN VIOLATION OF THE ELCRA

132.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

133.    At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of, the ELCRA.

134.    A respondeat superior relationship existed because Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity.

135.    Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to discriminate against an employee on the basis of their age.

136.    The ELCRA makes it so Plaintiff is a member of a protected class for the purpose of his age.

137.    Younger employees were treated differently than Plaintiff by being held to a less stringent standard, and were preferred over older workers who tended to suffer injuries after working for Defendant for many years.

138.   As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has sustained losses of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

139.   As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

140.   Plaintiff requests relief as described in the Prayer for Relief below.

**COUNT VIII**
**RETALIATION (EEO WITNESS)**

141.   Plaintiff incorporates by reference all allegations in the preceding paragraphs.

142.    At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

143.   A respondeat superior relationship existed because Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity.

144.   Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to retaliate against an employee for engaging in protected activity.

145.   Plaintiff engaged in protected activity, including but not limited to when he served as a witness in his coworker's wrongful termination lawsuit.

146.   Defendant, through its employees, had knowledge that Plaintiff engaged in protected behavior.

147.   Agents of Defendant took adverse employment actions against Plaintiff.

148.   But for Plaintiff's participation in protected activity, Defendant would not have taken the adverse employment actions against Plaintiff.

149.    Defendant's, by and through its agents', unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

150.    Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication, however, Defendant failed to remedy the situation.

151.    The communication and conduct was unwelcomed, and, was intended to and did substantially interfere with the Plaintiff's employment and created an intimidating, hostile, or offensive work environment as alleged in the statement of facts, ultimately resulting in his termination.

152.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff was terminated and has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

153.    As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

154.    Plaintiff requests relief as described in the Prayer for Relief below.

### COUNT IX
### RETALIATION (SEXUAL HARASSMENT WITNESS)

155.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

156.     At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

157.    A respondeat superior relationship existed because Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity.

158.    Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to retaliate against an employee for engaging in protected activity.

159.    Plaintiff engaged in protected activity, including but not limited to, when Defendant became aware that Plaintiff would be a witness and had knowledge of the facts surrounding an investigation into the sexual assault of a coworker.

160.    Defendant, through its employees, had knowledge that Plaintiff engaged in or would be engaging in protected behavior, as evidenced by statements made when he was given his severance agreement.

161.    Agents of Defendant took adverse employment actions against Plaintiff.

162.    But for Plaintiff's participation and/or planned participation in the aforementioned protected activity, Defendant would not have taken the adverse employment actions against Plaintiff.

163.    Defendant's, by and through its agent's,  unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

164.    Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication, however, Defendant failed to remedy the situation.

165.    The communication and conduct was unwelcomed, and, was intended to and did substantially interfere with the Plaintiff's employment and created an intimidating, hostile, or offensive work environment as alleged in the statement of facts, leading up to his eventual termination.

166.    As a direct and proximate result of Defendant's wrongful acts and omissions, leading up to and through his termination, Plaintiff has sustained loss of earnings, earning capacity,

23

and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

167.    As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

168.    Plaintiff requests relief as described in the Prayer for Relief below.

## **RELIEF REQUESTED**

PLAINTIFF, JAY PEMBERTON, RESPECTFULLY REQUESTS that this Court enter judgment against Defendants as follows:

1.    Actual damages in whatever amount to which Plaintiff is entitled;

2.    Exemplary damages in whatever amount to which Plaintiff is entitled;

3.    An award of interest, costs, and reasonable attorney fees; and

4.    An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  August 12, 2022

Respectfully Submitted,

/s/ Carla D. Aikens
Carla D Aikens (P69530)
Carla D. Aikens (P85701)
CARLA D. AIKENS, P.L.C.
*Attorneys for Plaintiff*
615 Griswold Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com
rejanae@aikenslawfirm.com

24