UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAY PEMBERTON,

    Plaintiff,

v.

BELL'S BREWERY, INC.,

    Defendant.
_____/

Case No. 1:22-cv-739

Hon. Hala Y. Jarbou

**OPINION**

Jay Pemberton brought this action against his former employer, Bell's Brewery, Inc. ("Bell's"), under various Federal and Michigan State employment laws. He claimed Bell's failed to accommodate his disability following a workplace injury, and subjected him to disability discrimination, age discrimination, and retaliation. On March 18, 2024, the Court issued an opinion and order granting Bell's motion for summary judgment and dismissing the case (ECF Nos. 110, 111, 112). Before the Court are several motions.

**I. DISCOVERY-RELATED SANCTIONS**

On November 20, 2023, Magistrate Judge Ray Kent issued an order disposing of several discovery-related issues related to the deposition of Dawn Wood, Pemberton's therapist (ECF No. 100). The magistrate judge awarded Bell's the fees associated with bringing its motion to compel Wood's second deposition testimony. Although Bell's motion to compel a second deposition was ultimately denied, the fees awarded were a sanction for Pemberton's counsel's conduct at Wood's *first* deposition. Pemberton objects to the magistrate judge's sanctions order (ECF No. 105). A district court reviews objections to a nondispositive order under a clear error or contrary-to-law standard. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).

During Wood's deposition, Bell's counsel sought information related to potential sources of Pemberton's alleged anxiety and emotional distress. (Wood Dep. 86-89, ECF No. 61-1.) When the topic turned to potential childhood trauma, Pemberton's counsel, LaTasha Brownlee, instructed Wood not to answer. At the time, Brownlee explained "I'm saying the details of those [incidents] are not relevant to the case. The fact that he had childhood trauma, relevant. The details of what that childhood trauma was, not relevant." (*Id.* 87.) When pressed, Brownlee explained her objection further, "because those details are personal . . . and private and have nothing to do with this[.]" (*Id.*) Despite Bell's explanation as to the reasoning for its line of questioning, Brownlee remained resolute that "We can move forward, or we can end the deposition." (*Id.*) Brownlee also stated that she would file for a protective order, which she eventually did, though only after Bell's moved to compel a second deposition. (ECF No. 65.)

The magistrate judge concluded that Brownlee violated Federal Rules 30 and 32 when she instructed Wood not to answer. As he explained, "you don't have the authority to order a non-client witness to not answer and your objections were improper . . . . [I]f you read both rules in their entirety, it's clear that the intent of the rules is to keep the deposition moving." (11/20/2023 Mot. Hr'g Tr. 25-26, ECF No. 116 (cleaned up).) Indeed, Rule 30(c)(2) is clear that "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). And sanctions, including attorney's fees, are available against "a person who impedes delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).

Pemberton makes three arguments; none is persuasive. His strongest argument is that Brownlee rightfully instructed Wood not to answer under Rule 30(d)(3)(A). That rule, which is referenced as a specific exception to Rule 30(c)(2), allows a party *on a motion to the Court* to

"terminate or limit" a deposition "on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A). The issue for Pemberton is that it is not clear from the record that Brownlee presented a proper 30(d)(3)(A) motion which would have triggered the relevant exception. The rule contemplates an exception when a *motion* is made to the Court, not merely an objection raised during the deposition. But such motion was never filed. Pemberton eventually filed for a *protective order* to prevent Wood from sitting for a second deposition. But this was filed nearly a month after Wood's initial deposition, only after Bell's moved to compel, and did not cite 30(d)(3)(A) as grounds.

Furthermore, when pressed for her authority to instruct Wood not to answer, Brownlee repeatedly cited *relevance* as her grounds. But relevance is not a proper ground to instruct a witness not to answer. In fact, a relevance objection has little place in a deposition as it is preserved even if not raised. Fed R. Civ. P. 32(d)(3)(A). The motion hearing transcript confirms that relevance was the animating force behind Brownlee's instruction. (*See, e.g.*, 11/20/2023 Mot. Hr'g Tr. 6.) Determining relevance is the province of the court, not the parties. Without a proper Rule 30(d)(3)(A) motion clear from the record, it was not clearly erroneous or contrary to law for the magistrate judge to sanction Pemberton for Brownlee's improper instruction.

Pemberton also argues that Rule 37(a)(5) prohibits fees in this instance because the magistrate judge ultimately denied Bell's motion to compel Wood's second deposition. Indeed, Pemberton argues that *he* should be awarded attorney's fees. Pemberton is mistaken. If a motion to compel is granted, Rule 37(a)(5)(A) requires "the party or deponent whose conduct necessitated the motion [to compel] . . . to pay the movant's reasonable expenses incurred in making the motion." Fed. R. Civ. P. 37(a)(5)(A). Conversely, if the motion is denied, the rule requires the

movant to pay the opposing party's reasonable expenses. *Id.* 37(a)(5)(B). This award rests on the outcome of a motion to compel and is agnostic as to the circumstances which led to the motion. But the magistrate judge explicitly sanctioned Pemberton for its counsel's conduct during the deposition. Rule 30(d)(2) explicitly allows for such a sanction. Rule 37(a)(5) does not override a Rule 30(d)(2) sanction merely because the judge ultimately arrived at the same conclusion as the party who initially overstepped his or her authority. That would impede the function of Rule 30, which is to keep the deposition moving. In any event, Rule 37(a)(5) provides an escape hatch "if the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5). Here, Brownlee's deposition conduct warranted Bell's motion to compel.

Pemberton warns of the "chilling effect" on litigants if they "had to have harmful and/or embarrassing information disclosed, and then later come to Court to seek a protective order[.]" (Pl.'s Objs. to 11/20/2023 Order 6.) But discovery is inherently a process where embarrassing information may come to light. This is a cost of bringing litigation. And the Rules already provide the mechanism Pemberton seeks. If a deposition is being conducted in a bad faith manner or is unreasonably embarrassing or oppressing a party, counsel may *motion the Court* to terminate or limit the deposition. When the motion is made, the deposition may be suspended "for the time necessary to obtain an order." Fed. R. Civ. P. 30(d)(3)(A). This is the appropriate process. It allows for a party to raise an issue with the Court who may then analyze the issue and rule—it does not allow that party to act as the arbiter of what is and is not appropriate. Pemberton's objection will be overruled.

## II. MOTION TO ALTER OR AMEND THE JUDGMENT

Pemberton seeks reconsideration of this Court's opinion and order granting Bell's summary judgment motion. (Pl.'s Mot. for Recons., ECF No. 115.) The Court will construe this motion as a motion to alter or amend judgment under Rule 59(e). "A court may grant a Rule 59(e)

motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)). Pemberton advances several arguments. Again, none is persuasive.

### A. Interactive Process and Failure to Accommodate

Pemberton cites *Blanchett v. Charter Communications, LLC*, 27 F.4th 1221 (6th Cir. 2021), for its proposition that "once an employee requests an accommodation, the employer has a duty to engage in an interactive process." *Id.* at 1232 (cleaned up) (citing *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018)). He argues, "This Court stated that Plaintiff did not make specific requests for accommodations; however the Court fails to take into consideration Defendant's failure to engage in the interactive process. The Court found that Plaintiff, as a matter of law, could not do his job with any accommodation, but Defendant never engaged in any process to discover that with Plaintiff while he was employed." (Pl.'s Mot. for Recons. 3-4.)

Pemberton's argument is difficult to square with both the record and this Court's opinion. As an initial matter, his implication that an employer's duty to engage in an interactive process to find an accommodation precedes an employee's duty to request that accommodation is wrong in both law and logic. *Blanchett* makes clear that the employer's duty attaches "*once* an employee requests an accommodation." *Blanchett*, 27 F.4th at 1232 (emphasis added). But here, as the Court noted, "there is no evidence of Pemberton actively requesting light duty work, or any other accommodation, after August 12, 2019 [, the applicable statute of limitations period]." (3/18/2024 Op. 17.) Thus, Pemberton has failed to adduce evidence that Bell's had a duty to engage in any process. This alone is sufficient to deny Pemberton's instant motion on this issue.

But the Court did not end its analysis there. Rather, it concluded Pemberton's claims failed as a matter of law even "assuming that [his] requests prior to August 12, 2019 . . . can be viewed as standing requests that carry into the statute of limitations period." (*Id.*) This conclusion rested, in part, on the degree to which Bell's worked with Pemberton to find a fitting accommodation:

> Still, it is worth emphasizing the accommodations Bell's did make. Bell's offered light duty work for several months following Pemberton's December 2018 injury. When the light duty work ran out, despite Bell's active search for such (see Johnson Decl. ¶ 9-10; Johnson Emails, ECF No. 80-4, PageID.1173-1198), it placed Pemberton on paid medical leave. It then placed Pemberton with a nonprofit partner and funded his full-time salary. When Pemberton no longer wanted to work at the nonprofit, it placed him back on paid medical leave until it located additional light duty work in October of 2019. A month later, his medical restrictions were lifted by his physician. This simply is not indicative of a failure by Bell's to accommodate Pemberton's asserted disability. Indeed, Bell's appears to have gone beyond what the [Persons with Disabilities Civil Rights Act] requires of employers.

(*Id.* at 17-18). Pemberton's unsupported assertion that Bell's failed to engage in an interactive process to accommodate his injury is without merit.

**B. Pretext**

Pemberton argues the Court inappropriately weighed competing evidence when it determined that Pemberton failed to establish that Bell's proffered reason for his termination was pretextual. Again, this argument is belied by the opinion. First, the Court found that Pemberton's prima facie case was "relatively tenuous." (*Id.* at 13.) It then assumed, without deciding, that Pemberton had made his prima facie case in order to analyze Bell's explanation for its adverse action. The Court concluded "Bell's has met its burden of production by proffering a legitimate, nondiscriminatory, and nonretaliatory reason for its actions—Pemberton's inappropriate behavior towards EE-1.[1]" (*Id.*)

---

[1] Both parties refer to the non-party employee as "EE-1" given the sensitive nature of the pertinent facts. The Court will use the same delineation.

The Court noted Pemberton's only response to Bell's proffered reason was that EE-1 must have lied to Bell's about Pemberton's inappropriate behavior towards EE-1 because EE-1 had, at some point, referred to Pemberton as "essentially a big teddy bear." (*Id.* at 14.) Notably, the Court "[could not] locate this quote in the deposition transcripts provided by either party." (*Id.*) But it *once again* assumed, for the sake of analysis, that EE-1 had made the comment. The Court then concluded that the comment "would be out of context at best and actively misleading at worst" because it was directly contrary to EE-1's other testimony. (*Id.*) Further, EE-1's supposed characterization of Pemberton as a "big teddy bear" does nothing to counter the fact that Pemberton made highly inappropriate comments towards EE-1, a fact which Pemberton admits. Pemberton therefore has not shown that Bell's "relie[d] on false information for a determination or basis for termination." (Pl.'s Mot. for Recons. 4.)

The Court made several assumptions in favor of Pemberton—first, that he had established a prima facie case, and second, that he had put forth *some* evidence of pretext. But *some* evidence of pretext is not enough. "To survive summary judgment, a plaintiff 'must produce *sufficient* evidence from which a jury could reasonably reject [the defendant's] explanation of why it' took an adverse employment action against the plaintiff." *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 612 (6th Cir. 2019) (emphasis added, alteration in original) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). A jury could not reasonably reject Bell's explanation here. Pemberton has failed to carry his burden.

### C. Retaliation

Pemberton argues this Court erred in determining that he did not engage in protected activity under Title VII when he relayed to Bell's information pertinent to another employee's sexual assault allegations. Pemberton glosses over much of this Court's opinion to make this argument.

7

The Court noted three independent reasons to grant Bell's summary judgment on Pemberton's Title VII retaliation claim: (1) assuming Pemberton established his prima facie case, he failed to establish Bell's reason for termination was pretextual; (2) Pemberton failed to exhaust his administrative remedies; and (3) Pemberton failed to establish his prima facie case for retaliation. Each is a reason to grant Bell's summary judgment; Pemberton's motion addresses only reason (3).

Regardless, Pemberton's argument is unpersuasive. The Court did not *only* rely on his failure to show that he was engaged in a protected activity to conclude that he failed to establish his prima facie case. Indeed, the Court noted that "he has failed to connect the dots to establish [his serving as a Title VII witness] as the motivating factor" behind Bell's employment actions. And there must be "a causal connection between the protected activity and the adverse employment action." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014). Here, Bell's actively tried to get Pemberton to participate in the Title VII investigation. His participation was an explicit condition of the last chance agreement—which Pemberton rejected—that would have allowed him to keep his job. Pemberton is correct that the prima facie burden is easily met, he simply has not met it.

Based on the foregoing, Pemberton's motion to alter or amend the judgment under Rule 59(e) will be denied.

### III. BELL'S BILL OF COSTS

As the prevailing party, Bell's seeks certain costs as authorized by Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920. Specifically, Bell's seeks deposition and transcript costs of $3,756.85 under § 1920(2) as well as $446.83 in costs associated with obtaining third party medical records under § 1920(4). Bell's has supported its Bill of Costs with invoices and a declaration by counsel. (Stocker Decl., ECF No. 113-2.)

**A. Deposition Costs**

"[T]he costs of taking and transcribing depositions reasonably necessary for the litigation are allowed to the prevailing party." *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir. 1989).  Bell's asks the Court to tax Pemberton its costs associated with five depositions: Pemberton, Carrie Yunker, Emily Schuiling, EE-1, and Paul Kilmer.  It does not seek costs associated with depositions not used in its summary judgment motion.  Indeed, Bell's cited each of these asserted depositions in its summary judgment motion and the Court in turn cited each in its summary judgment opinion.

A few examples of how the Court relied on these depositions follow.  Yunker provided details surrounding Bell's decision to terminate Pemberton.  (3/18/2024 Op. 4-5.)  Schuiling detailed some of the considerations that went into offering certain accommodations and alternative employment conditions to Pemberton.  (*Id.* at 4-6.)  EE-1 corroborated Bell's proffered reason for its adverse employment actions against Pemberton.  (*Id.* at 4-5, 15.)  Kilmer substantiated the timing of Pemberton's injuries and his resulting medical restrictions.  (*Id.* at 3.)  And, of course, Pemberton's deposition was referenced throughout the opinion.  Each of these factored into this Court's conclusion.  Thus, contrary to Pemberton's assertions, these depositions were not "merely investigative, preparatory, or useful for discovery."  (Pl.'s Objs. to Def.'s Bill of Costs 4 (citing *Baker v. First Tenn. Bank Nat'l Ass'n*, No. 96-6740, 1998 WL 136560, at *5 (6th Cir. Mar. 19, 1998)).)  Further, it is immaterial that some deposition testimony overlaps.  Overlapping and corroborating evidence is often necessary to prove a case.

Finally, Pemberton's assertion that Bell's failed to substantiate its motion with invoices is incorrect—the invoices were attached to its counsel's declaration.  (Stocker Decl., PageID.1861-1865.)  His assertion that "[t]he maximum transcript rate for an original transcript in the thirty-day turnaround time in this Court is $4.00 per page, and $1.00 for a copy" is also incorrect.  Pemberton

9

cites the fee schedule for requesting transcripts from the court reporter—this is not a maximum fee schedule for *other* transcript services.

The Court concludes Bell's deposition costs were reasonably necessary for its summary judgment motion. It will therefore tax the costs to Pemberton over his objections.

### B. Medical Records Costs

Bell's seeks $446.83 in costs associated with obtaining copies of Pemberton's medical records. Pemberton argues that the costs of obtaining medical records are not authorized by 28 U.S.C. § 1920. But other courts in this circuit have concluded otherwise. *See, e.g.*, *Lensing v. Potter*, No. 1:03-cv-575, 2015 WL 10892073, at *17 (W.D. Mich. Aug. 20, 2015) (awarding medical records costs and noting "[a]lthough the Sixth Circuit has not addressed whether medical records may be awarded as costs under § 1920, other circuits have found that the district court did not abuse its discretion when awarding costs under § 1920(4) for medical records where the records were necessary for the litigation . . . ."); *Thompson v. Fresh Prod., LLC*, No. 3:18-cv-1243, 2020 WL 11860872, at *2 (N.D. Ohio Jan. 31, 2020) (allowing costs for copies of medical records); *Anderson v. Jo-Ann Stores Inc.*, No. 3:09-1042, 2011 WL 3608560, at *2 (M.D. Tenn. Aug. 15, 2011) (same). Thus, there is persuasive authority for taxing these costs to Pemberton so long as they were reasonably necessary to Bell's defense.

The Court finds that these costs were reasonably necessary. Although neither Bell's nor the Court referenced these medical records directly, the records were referenced by Bell's during its deposition of Kilmer. The Court found Kilmer's deposition reasonably necessary. Furthermore, "the fact that the documents were not used at summary judgment is not dispositive." *Thompson*, 2020 WL 11860872, at *2. And more importantly, this case centered around Pemberton's asserted physical disability. A disability case will necessarily involve some evidence about the diagnosis and treatment of that disability. To echo the court in *Thompson*, "this was a

10

disability case—meaning Plaintiff's medical history was clearly 'at issue.'" *Id.* (citing *Roll v. Bowling Green Metal Forming, LLC*, No. 1:09-cv-81-TBR, 2010 WL 3069106, at *1 (W.D. Ky. Aug. 4, 2010)).

As with its deposition costs, Bell's has substantiated its medical records costs with invoices. The Court concludes these copying costs were reasonably necessary and will thus tax the costs to Pemberton over his objections.

## IV. CONCLUSION

Based on the foregoing, the Court will: (1) deny Pemberton's objections to the magistrate judge's sanctions order; (2) deny Pemberton's motion for reconsideration of its summary judgment motion, which the Court construes as a motion to alter or amend the judgment; and (3) approve Bell's bill of costs over Pemberton's objections.

An order will enter consistent with this Opinion.


Dated: June 5, 2024                             /s/ Hala Y. Jarbou
                                                HALA Y. JARBOU
                                                CHIEF UNITED STATES DISTRICT JUDGE